1   BOBBY GHAJAR (SBN 198719)
    Bobby.ghajar@pillsburylaw.com
2   MARK LITVACK (SBN 183652)
    Mark.litvack@pillsburylaw.com
3   MARCUS D. PETERSON (SBN 265339)
    Marcus.peterson@pillsburylaw.com
4   PILLSBURY WINTHROP SHAW PITTMAN LLP
    725 South Figueroa Street, Suite 2800
5   Los Angeles, CA  90017-5406
    Telephone: (213) 488-7100
6   Facsimile: (213) 629-1033
    Attorneys for Plaintiff
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11

12  CREATIVE THINKERS, INC, a        No. CV11-1932AG(JPRx)
    Canadian Corporation,            SACV11-1932AG(JPRx)

13                   Plaintiff,       COMPLAINT FOR
                                      TRADEMARK
14        vs.                         INFRINGEMENT; FALSE
                                      DESIGNATION OF ORIGIN;
15  CHRIS MANZO, an Individual;       UNFAIR COMPETITION;
    ALBIE MANZO, an Individual;       BREACH OF WRITTEN AND
16  CHRIS LAURITA, an Individual.     ORAL AGREEMENTS;
    BLK BRANDS, LLC, a New York       BREACH OF FIDUCIARY
17  Limited Liability Company;        DUTY; BREACH OF
    JACQUELINE WILKIE, an             CONFIDENCE;
18  Individual; LOUISE WILKIE, an     MISAPPROPRIATION OF
    Individual; CE ORGANICS, a        TRADE SECRETS
19  Canadian Company of unknown
    structure; ECLIPSE CONCEPTS,
20  INC., a Canadian Corporation;     JURY TRIAL DEMANDED

21                   Defendants.

22

23                   **INTRODUCTION**

24        This case combines international theft with reality television, as

25  Defendants have conspired together to steal the creation and property of the

26  Plaintiff, Creative Thinkers, Inc.  Creative Thinkers created the concept and

27  idea of the "better mousetrap" of water drinks when it developed the idea and

28  concept of infusing water with the minerals fulvic acid and humic acid and

1   mass marketing the product as BLACKWATER.  Originally, Creative

2   Thinkers had contracted with, and partnered with, some of the Defendants to

3   bring its idea and concept to fruition, including entering into a Non-Disclosure

4   Agreement with the Defendants.  Plaintiff trusted its partners – those

5   Defendants - who agreed to work with the Plaintiff to bring its

6   BLACKWATER concept to market.  Despite Defendants' written and oral

7   agreements with the Plaintiff, and in direct contradiction to the legal duties

8   Defendants owed Plaintiff as partners and officers, driven by the motivation of

9   greed, the Defendants have worked together to steal the idea, concepts, and

10  property of the Plaintiff.  Defendants apparently believe that it is simply more

11  profitable to steal than to honor their obligations and recognize the true

12  creators of a concept and idea.  Defendants have breached their agreements,

13  broken their promises, and repeatedly committed fraud and deception in their

14  television-supported attempt to wrongfully confiscate the very concept and the

15  name of BLACKWATER.

16          Defendants have used their purported reality TV show fame to concoct

17  a fairy tale fiction as to how they conceived the idea behind BLACKWATER.

18  Such fiction belies the facts and evidence, which lead to the true conclusion

19  that Defendants simply stole it.  Plaintiff brings this case to have its stolen

20  property returned to it, to recover the monies and good will wrongfully taken

21  from it and to prevent the Defendants from wrongfully profiting from their

22  theft, deception, and infringement.

23                          **THE PARTIES**

24          1.     Creative Thinkers, Inc. (hereinafter, singularly or collectively

25  with its affiliates and owner, "CTI") is a corporation organized and existing

26  under the laws of British Columbia, Canada, having its headquarters and

27  principal place of business at 300-1062 Homer St., Vancouver, B.C., Canada

28  6B 2W9.  CTI is a rightful owner of the BLACKWATER trademark.

2.      Upon information and belief, Defendant BLK Brands LLC ("BLK") is a limited liability company organized and existing under the laws of the state of New York and having its headquarters and principal place of business at 214 West 39th Street, Suite 202, New York, NY 10018.

3.      Upon information and belief, Defendant Chris Manzo is an individual who is a citizen, and domiciliary, of New Jersey.  Mr. Manzo is a partner of BLK and his public and national and international television appearances on behalf of BLK have garnered public attention to BLK and its product.  *See*, for example, http://foodspring.com/content/blackwater/ (last visited November 17, 2011).  Mr. Manzo is one of the conscious, dominant and active forces behind the wrongful acts of BLK complained of herein, which wrongful acts he has engaged in for the gain and benefit of BLK and for his own individual gain and benefit.

4.      Upon information and belief, Defendant Albie Manzo is an individual who is a citizen, and domiciliary, of New Jersey.  Mr. Manzo is a partner of BLK and his public and national and international television appearances on behalf of BLK have garnered public attention to BLK and its product.  *See*, for example, http://foodspring.com/content/blackwater/ (last visited November 17, 2011).  Mr. Manzo is one of the conscious, dominant and active forces behind the wrongful acts of BLK complained of herein, which wrongful acts he has engaged in for the gain and benefit of BLK and for his own individual gain and benefit.

5.      Upon information and belief, Defendant Chris Laurita is an individual who is a citizen, and domiciliary, of New Jersey. Mr. Laurita is a partner of BLK and his public and national and international television appearances on behalf of BLK have garnered public attention to BLK and its product.  *See*, for example, http://montville.patch.com/articles/real-housewives-continues-to-be-heartbreaking (last visited November 17, 2011).

1   Mr. Laurita is one of the conscious, dominant and active forces behind the

2   wrongful acts of BLK complained of herein, which wrongful acts he has

3   engaged in for the gain and benefit of BLK and for his own individual gain

4   and benefit.

5       6.      Upon information and belief, Defendant Jacqueline Wilkie is an

6   individual who is a citizen, and domiciliary, of Vancouver, British Columbia,

7   Canada.  Ms. Wilkie was a former business partner of Ivan Solomon, owner of

8   CTI, and Gordon Jung, and for a period of time, and acted and represented

9   herself as a Vice President of Blackwater Innovations Corp., the company that

10  marketed and sold BLACKWATER.  Ms. Wilkie claims to be a partner in

11  BLK.  Ms. Wilkie is one of the conscious, dominant and active forces behind

12  the wrongful acts of BLK complained of herein, which wrongful acts she has

13  engaged in for the gain and benefit of BLK and for her own individual gain

14  and benefit.

15      7.      Upon information and belief, Defendant Louise Wilkie is an

16  individual who is a citizen, and domiciliary, of Vancouver, British Columbia,

17  Canada.  Ms. Wilkie was a former business partner of Ivan Solomon, owner of

18  CTI, and Gordon Jung, and for a period of time, and acted and represented

19  herself as a Vice President of Blackwater Innovations Corp., the company that

20  marketed and sold BLACKWATER.  Ms. Wilkie claims to be a partner in

21  BLK.  Ms. Wilkie is one of the conscious, dominant and active forces behind

22  the wrongful acts of BLK complained of herein, which wrongful acts she has

23  engaged in for the gain and benefit of BLK and for her own individual gain

24  and benefit.

25      8.      Upon information and belief, Defendant CE Organics, Ltd.

26  ("CEO") is or was a company organized and existing under the laws of British

27  Columbia, Canada, with a principal place of business of 101-5498 267th St.,

28

Aldergrove, B.C. V4W 1P7, Canada.  CEO is co-owned by Jacqueline and Louise Wilkie.

9.    Upon information and belief, Defendant Eclipse Concepts, Inc. ("Eclipse") is or was a company organized and existing under the laws of British Columbia, Canada, with a principal place of business of 15573 Goggs Ave., White Rock, B.C., V4B 2N5, Canada.  Eclipse is co-owned by Jacqueline and Louise Wilkie.

## JURISDICTION AND VENUE

10.    Jurisdiction of all trademark claims is proper under 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338  as the claims arise under the laws of the United States, including violations of the Lanham Act, as amended, 15 U.S.C. §§ 1041 *et seq.*

11.    Jurisdiction of all other claims is proper under 28 U.S.C. § 1332(a) (2) as the matter is between citizens of different States (New York and New Jersey) and subjects of a foreign state and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.  Jurisdiction is also proper under 28 U.S.C. §1367 as the claims are so related as to form the same case or controversy.

12.    Venue is proper in this district as several of the events giving rise to this action occurred in this district and because the claims arise out of the same transactions and occurrences as the events giving rise to this action.  The Court has personal jurisdiction over the Defendants because each transacted business in this District through the marketing and sale of the infringing product and via attendance at trade shows.

## FACTUAL BACKGROUND

## Creation of the BLACKWATER Concept

13.    In July 2009, CTI was introduced to fulvic and humic acids, nutritional supplements derived from 80-million-year old organic matter.

14.     Fulvic acid has been recognized as having numerous health benefits including that it:

- Will alkaline the blood faster than any other natural health product on earth.
- Has over 77 Macro and Trace Minerals, naturally occurring in their ionic (nano) form for ultimate absorption.
- Works with Humic Acid to remove unwanted salt acids that surround & harden cell walls, creating cell permeability.
- Is the electrolyte that enables our cells to absorb nutrients and is a multi-directional antioxidant.
- Detoxifies the body by eliminating heavy metals and toxins and is considered the most powerful form of Oral Chelation.
- Allows other Super-Foods, Vitamins, and Herbs to be absorbed and effectively utilized by the body.
- Provides increased energy, mental clarity, and sense of well being by feeding and nourishing every cell in the body.

15.     At a meeting during which they were introduced to fulvic and humic acids (though at the time it was referred to only as "fulvic acid"), CTI became aware that adding fulvic and humic acids to water darkened it temporarily until the minerals settled to the bottom of the glass.  CTI immediately saw a unique opportunity for such a product – while suppliers sold fulvic acid online, no one was selling water blended with fulvic and humic acids.  Later that summer, CTI began to test and evaluate different formulations, proper base water and satisfactory bacterial levels, in which water mixed with fulvic and humic acids would create a unique beverage that was permanently black in color.

16.     Ivan Solomon, owner of CTI, immediately began creating a logo and look for the new product and created a logo and concept that later formed

the basis of the BLACKWATER sales and marketing (see insert below). Solomon and his business partner Gordon Jung agreed that they would equally fund and share in the product and that all rights would belong to CTI until a time when it was appropriate for Blackwater to become its own company.



17.    CTI understood that it needed to find a bottler to assist in the bottling and distribution of BLACKWATER.

**Blackwater's Founders Involve the Wilkie Sisters in the BLACKWATER Project**

18.    In September 2009, Jung, an authorized agent and representative for CTI, attended the Seattle Coffee Fest Trade Show, in Seattle, Washington, where he met with the Wilkie Sisters, who were attending the same trade show on behalf of their company CEO. The Wilkie Sisters remembered Jung from his previous role with Overwaitea Food Group, a supermarket chain in Canada. Based upon Jung's knowledge of the Wilkie Sisters' business he

1   shared, in confidence, the BLACKWATER concept and the fact that he was

2   looking for a bottler.

3        19.    The Wilkie Sisters stated they had never heard of fulvic acid and

4   were immediately interested in the product.  They stated that they could bottle

5   a run of the BLACKWATER beverage.  Separately, the Wilkie Sisters

6   expressed interest in Jung's Overwaitea contacts in connection with CEO's

7   coffee syrup products.  Jung and the Wilkie Sisters agreed to meet at a later

8   date.

9        20.    In early October 2009, CTI, represented by Solomon and Jung

10   met with the Wilkie Sisters at the CEO facility in Langley, B.C., Canada.  CTI

11   confidentially explained the benefits of fulvic acid and showed the graphics

12   created for BLACKWATER.  The Wilkie Sisters stated that they would bottle

13   a sample run of BLACKWATER in exchange for Solomon designing a new

14   label for CEO syrups and for Jung introducing CEO to his Overwaitea

15   contacts.

16        21.    About a week later, CTI again met with the Wilkie Sisters at the

17   CEO facility.  The Wilkie Sisters had bottle samples and CTI selected a bullet-

18   shaped, 500 ML glass bottle.  The Wilkie Sisters had also contacted a label

19   supplier and discussed costs of producing a run of BLACKWATER.

20        22.    On October 27, 2009, CTI established the website

21   www.blackwaterdrink.com.

22        23.    In early November 2009, CTI again met with the Wilkie Sisters.

23   The Wilkie Sisters stated that they had a connection with Starbucks in Seattle

24   and could get BLACKWATER into Starbucks and other distributors around

25   Seattle.  They also stated they could get the product sold through

26   Amazon.com.  During the meeting, to confirm the fact that their conversations

27   were all confidential, CTI entered into a non-disclosure agreement with the

28   Wilkie Sisters related to "Blackwater Drink Products" to ensure that no

1    confidential information related to the concept, formula, or marketing and

2    sales plans were disseminated by the Wilkie Sisters.

3        24.    The Wilkie Sisters executed this non-disclosure agreement on

4    behalf of themselves and CEO.

5        25.    At the end of 2009, Louise Wilkie sent to CTI a document

6    entitled "MOU Discussion Points" in which the Wilkie Sisters suggested a 4-

7    way split of a joint venture to market and sell BLACKWATER, CEO syrups,

8    and products called Nature at Work.  This proposal was never accepted.

9        26.    Early the next year, Solomon, Jung and the Wilkie Sisters met at

10   CTI's offices to discuss the structure of the company and plans for marketing

11   BLACKWATER and CEO syrups.  The Wilkie Sisters pushed for the 4-way

12   split of BLACKWATER as discussed in the MOU, but Solomon and Jung

13   would not agree to this.

14   **The Wilkie Sisters Plot to Extort a Greater Percentage of**

15   **BLACKWATER**

16       27.    In mid-January 2010, Jung contacted an attorney about filing

17   trademark applications in the United States and Canada, which was estimated

18   to cost about $2000.   Solomon shared this information with Jung and the

19   Wilkie Sisters.  Jacqueline Wilkie stated that she had prior experience

20   applying for trademarks online, and that she could apply for BLACKWATER

21   online herself and it would be significantly less than $2000.  She offered to do

22   so for CTI.

23       28.    CTI agreed to allow Jacqueline Wilkie to register

24   BLACKWATER in its name and Ms. Wilkie agreed to do so.

25       29.    Shortly thereafter, CTI became aware of the fact that Jacqueline

26   Wilkie had deceived and misled it and that in fact the BLACKWATER

27   DRINK mark had been applied for in Canada by Jacqueline Wilkie on

28   December 11, 2009, over a month prior to a trademark discussion among the

1   parties (but after Ms. Wilkie had signed the non-disclosure agreement).  CTI

2   later learned that Jacqueline Wilkie had also filed an application for

3   BLACKWATER in the United States on January 13, 2010.  Jacqueline Wilkie

4   did not disclose these trademark applications to CTI.

5        30.     When CTI raised this issue with Jacqueline Wilkie, she claimed

6   that she had registered the BLACKWATER mark to protect CTI.  CTI

7   demanded that Jacqueline Wilkie immediately re-assign the trademark filings

8   to it, as Ms. Wilkie had no rights to a registration for BLACKWATER and

9   CTI was the rights holder.  Jacqueline Wilkie agreed to transfer the rights.

10       31.     In early February, Jung took a trademark assignment form to a

11  meeting with Louise Wilkie.  Louise Wilkie took the form, but Jacqueline

12  Wilkie did not sign in.  Instead, she stated that she would not sign it unless the

13  trademark was assigned to a company in which she was given an ownership

14  stake.  The Wilkie Sisters pushed for a 25% ownership each in the new

15  company.

16       32.     On information and belief, the Wilkie Sisters had their own

17  lawyer re-draft the trademark assignment form to state that Ms. Wilkie was

18  under no obligation to transfer the Canadian registration until the Wilkie

19  Sisters were given shares in a new company.  While the assignment form

20  presented by CTI would have included Ms. Wilkie's trademark applications

21  world-wide, the Wilkie Sisters ensured that the assignment form they signed

22  only covered Canada.  CTI was unaware of this modification at the time

23  Solomon signed the trademark assignment.

24       33.     In February 2010, the Wilkie Sisters were told that if they did not

25  want to be a part of the new venture at 10% each, they could return to being

26  the exclusive bottlers of BLACKWATER.

27       34.     Solomon and Jung agreed to create a new company, the name of

28  which was to be decided later, which would own the rights to

COMPLAINT                           - 10 -

Case No.

BLACKWATER.  Each of the Wilkie Sisters would get 10% of the company and Solomon and Jung would each have 40%.  The Wilkie Sisters agreed and further agreed that they would continue to work to market and sell the BLACKWATER products on behalf of Blackwater.  Each was made a Vice President of what was then called Blackwater Drink Co.

35.    Jacqueline Wilkie did not assign the Canadian registration until July 2010 and never assigned the US application to CTI or to the new entity.

36.    At no point did either Wilkie Sister suggest that the Wilkie Sisters had originally created the BLACKWATER concept, introduced the others to fulvic acid, or provided any intellectual property in the form of trademarks or graphic creation.

**As BLACKWATER Grows, the Wilkie Sisters Continue to Plot for a Greater Share, or to Steal BLACKWATER Completely**

37.    In mid-February 2010, Louise Wilkie contacted Solomon and Jung and again pushed for a four-way partnership, wrongfully exploiting the trademark application that Jacqueline Wilkie had filed in her own name.

38.    By April 2010, CTI had refined the design of the labels used on bottles of BLACKWATER.  It appeared as below:



COMPLAINT

Case No.

39.     In early spring, 2010, Ms. Wilkie forwarded a 6-month business plan prepared by National Sales Group ("NSG"), a promotion and marketing company based in Kentucky. The next day, she forwarded an email sent to her by Tim Gregory of NSG and listed the benefits of working with NSG, including that "He knows the shows to be in and can let it out to his network of distributors as we allow."

40.     On May 3, 2010, a limited liability company (0880079 BC Limited, later changed to Blackwater Innovations Corp. ("Blackwater")) was formed. Solomon and Jung each owned 40% of the company and the Wilkie Sisters each owned 10%, though the Wilkie Sisters never took possession of their shares of the company.

41.     Shortly thereafter, Mr. Gregory and other representatives of NSG visited Blackwater in Vancouver, at Solomon and Jung's expense. NSG stated that with their network of distributors and brokers in the United States, they could get BLACKWATER to $5 million in sales in the first year. Blackwater signed an agreement with NSG to pay $6000 a month for NSG's services – also paid for by Solomon and Jung.

42.     Blackwater and CTI continued to seek out product placement opportunities. Jacqueline Wilkie forwarded to Blackwater and CTI an email with product placement suggestions, including logo placement in films and television shows, and a co-branding agreement to become the preferred water of the Bellagio Resort in Las Vegas. Ms. Wilkie acknowledged in an email with a third party that she would have to get approval of the "President of Blackwater."

43.     In June 2010, NSG confirmed that it had reserved a booth at the New York Fancy Foods Show at the end of the month. NSG planned to display BLACKWATER products along with other brands NSG represented.

**The Wilkie Sisters Meet the Manzo-Laurita Family and Attempt to Steal BLACKWATER**

44.     Upon information and belief, from June 25-30, 2010, Blackwater and CTI attended the New York Fancy Foods Show.  BLACKWATER was very well received at the show, attracting attention from Kroger, IGA, Super Value, Panera Bread, and other retailers and restaurants.  Blackwater sent 80 cases worth of samples to companies across the country based on contacts made at the show.

45.     Upon information and belief, the Wilkie Sisters first met Chris Manzo, Albie Manzo, and/or Chris Laurita (collectively "Manzo-Laurita Family") at the New York Fancy Foods Show in 2010.  For example, in an August 9, 2011 article for the Franklin Lakes Patch, Albie Manzo and Chris Laurita stated that they first discovered "black water [sic], as it was called" at the New York foods show the previous year.  *See Manzo-Laurita Family Strikes Black Gold with Blk.* available at http://franklinlakes.patch.com/articles/manzo-laurita-family-strikes-black-gold-with-blk (last visited November 11, 2011).  Upon information and belief, it was then that the Wilkie Sisters and the Manzo-Laurita Family decided to cut CTI out of the business and steal BLACKWATER for their own use.  The Manzo-Laurita family's actions predate the organization of BLK, which was on February 17, 2011 and were the actions of those individuals.

46.     After the New York Fancy Foods Show in June 2010, CTI met with the Wilkie Sisters at CTI's offices.  The Wilkie Sisters again demanded more than 20% total of the company.  Alternatively, the Wilkie Sisters demanded that Solomon and Jung allow their investor, a man named "Bruno," to invest $250,000 in exchange for 20% of the company, or they would leave Blackwater.  Solomon and Jung had already accepted an investment from

1  another investor and told the Wilkie Sisters that they would not accept Bruno

2  as an investor.

3      47.   Jacqueline Wilkie transferred the Canadian BLACKWATER

4  DRINK registration to Blackwater on July 13, 2011, but did not transfer the

5  US application, despite having agreed to do so.

6      48.   In August, 2011, the Wilkie Sisters concluded their relationship

7  with CTI and Blackwater, stating they would "call it a day" and "move on."

8      49.   Upon information and belief, before the relationship with

9  Blackwater had terminated, the Wilkie Sisters had created a new company,

10  called Eclipse.  The Wilkie Sisters and Eclipse wrongfully promoted and

11  marketed the BLACKWATER beverage **as Eclipse's own brand.**  They

12  entered BLACKWATER into the 2010 Water Innovations awards and Eclipse

13  Concepts gained notoriety as a finalist for Best New Functional Water and

14  Best Newcomer.  *See Packaged Water Industry Celebrates Success at*

15  *Gleneagles*, available at http://www.foodbev.com/news/packaged-water-

16  industry-celebrates-success-at-gleneagles (last visited November 11, 2011).

17  According to publicly available information, the Wilkie Sisters brazenly

18  entered Blackwater's product with Blackwater's logo and bottle design:

19      50.   Upon information and belief, in the meantime, the Wilkie Sisters



and the Manzo-Laurita Family continued to build a company around the stolen BLACKWATER brand.  *See Interview with blk Beverages co-founder Albie Manzo*, available at http://www.foodbev.com/interview/interview-with-blk-beverages-co-founder (last visited November 11, 2011).  Using NSG, and a supply of fulvic acid from GTX (a company that was supposed to have a proprietary relationship with CTI), the group began to distribute water under the BLACKWATER mark.

51.      On April 25, 2011, in furtherance of the U.S. trademark application for the BLACKWATER mark that she had allegedly filed for CTI, Jacqueline Wilkie filed a "Statement of Use."   In the Statement of Use, she claimed a first use as of August 1, 2010.  To prove use, she submitted the following exemplar of use, which was a direct knock-off of the bottle that Blackwater had been using (see below).  Concurrently, she transferred the application into the name of BLK.



*Specimen submitted by J. Wilkie*



*Blackwater bottle*

52.     On information and belief, Jacqueline Wilkie had not used BLACKWATER in commerce in her own name as of August 1, 2010.  Also on information and belief, neither Jacqueline Wilkie nor BLK have ever sold any products using the above bottle design.

53.     On July 18, 2011, CTI and Blackwater sent a cease and desist letter to BLK, claiming trademark infringement and that BLK's BLACKWATER registration was subject to cancellation based on fraud on the USPTO.  BLK did not respond to the letter, but instead instituted an action in the Court claiming that it, not Blackwater, owned the BLACKWATER mark.

54.     On August 29, 2011, BLK filed application serial number 85/409,637 to register "blk. BLACKWATER" with the U.S. Patent and Trademark Office, claiming a first use as of February 2010.  However, BLK had earlier claimed not to have used BLACKWATER until August 2010 and BLK was not even formed until February 2011.

## FIRST CAUSE OF ACTION

### (Conversion)

### Against All Defendants

55.     CTI incorporates by reference and re-allege allegations 1-54 above, as if set forth fully herein.

56.     CTI, together with Blackwater, owns rights in the BLACKWATER concept, in the name and logo, and in the proprietary process for making and bottling BLACKWATER.

57.     Defendants have stolen and converted CTI's rights through the acts as described above.

58.     This conversion has damaged, and continues to damage, CTI. The Defendants wrongfully sell a competing product to prospective purchasers of BLACKWATER.  CTI has lost, and continues to lose, sales and business opportunities as a result of the conversion.

## SECOND CAUSE OF ACTION

### (Breach of Non-Disclosure Agreement)

### Against CEO, Jacqueline Wilkie and Louise Wilkie

59.     CTI incorporates by reference and re-alleges allegations 1-58 above, as if set forth fully herein.

60.     On November 1, 2009, CTI prepared a non-disclosure agreement to protect against the disclosure of any confidential or proprietary information related to BLACKWATER.  This included the concept behind BLACKWATER, the concept of selling fulvic acid infused water to the public, marketing and sales plans, and the method of creating a unique beverage containing suspended fulvic and humic acids that was permanently black in color.

61.     The Wilkie Sisters willingly and knowingly signed and entered into the agreement on behalf of CEO, intending to be bound to its terms in exchange for a right to assist in the bottling and sale of BLACKWATER.

62.     CEO breached this agreement when The Wilkie Sisters stole the BLACKWATER name, stole the company's marketing and distribution plans, and attempted to steal the proprietary fulvic acid formula for their own commercial gain.  The Wilkie Sisters attempted to profit financially through the breach of the agreement and creation of a competing product.

63.     The breach of the non-disclosure agreement has damaged, and continues to damage CTI.  The Wilkie Sisters, themselves and through Eclipse, and BLK have sold and/or are selling a competing product using Blackwater's proprietary information.  CTI has lost, and continues to lose, sales and business opportunities as a result of the breach of the non-disclosure agreement.

## THIRD CAUSE OF ACTION

### (Breach of Contract to Re-Assign the U.S. Application for BLACKWATER)

### Against Jacqueline Wilkie

64.     CTI incorporates by reference and re-allege allegations 1-63 above, as if set forth fully herein.

65.     Jacqueline Wilkie filed application Ser. No. 77/910,623 ("the '623 Application") for BLACKWATER in connection with "drinking water" with the USPTO in her own name on January 13, 2011.  Jacqueline Wilkie improperly filed the '623 Application in her own name, instead of in the name of CTI, as agreed.

66.     When CTI discovered this, it demanded Ms. Wilkie re-assign the application to CTI, along with a Canadian registration for BLACKWATER DRINK.  Ms. Wilkie agreed to re-assign both.

67.     Ms. Wilkie breached this agreement and she never re-assigned the '623 Application to CTI.

68.     CTI has been damaged through the breach of the agreement.  CTI has lost sales and business opportunities because of Defendants' registration and misappropriation of the BLACKWATER mark.

## FOURTH CAUSE OF ACTION

### (Breach of Fiduciary Duty)

### Against Jacqueline Wilkie and Louise Wilkie

69.     CTI incorporates by reference and re-allege allegations 1-68 above, as if set forth fully herein.

70.     Jacqueline Wilkie and Louise Wilkie were partners with CTI for the development, marketing, and sales of BLACKWATER products.

71.     As such, a fiduciary relationship existed between the Wilkie Sisters and CTI.

72.     The Wilkie Sisters breached their fiduciary duty in at least two ways. First, they did not act in the best interest of the partnership. They continuously attempted to extract greater control of Blackwater and refused to transfer the trademark to CTI or to Blackwater. They also secretly made an agreement with GTX for a proprietary fulvic acid blend in the name of CEO.

73.     Second, the Wilkie Sisters took corporate opportunities for themselves and their new business partners. The Wilkie Sisters used contacts and potential sales opportunities, as well as the services of NSG into their new venture. Those corporate opportunities should have belonged to CTI and Blackwater and the Wilkie Sisters usurped them for their own personal gain. Moreover, the Wilkie Sisters used BLACKWATER product and entered it into a competition under the name of their own company, Eclipse, which later garnered Eclipse publicity and accolades for a product that belonged to CTI.

74.     CTI has been damaged through the breach of fiduciary duty. CTI has lost sales, promotional, and business opportunities because of the Defendants' use of the business opportunities and transactions that were rightfully CTI's.

## FIFTH CAUSE OF ACTION

### (Breach of Confidence)

### Against Jacqueline Wilkie, Louise Wilkie, and CEO

75.     CTI incorporates by reference and re-allege allegations 1-74 above, as if set forth fully herein.

76.     On account of the Wilkie Sisters' positions as Vice Presidents and part owners of Blackwater, they received confidential information that belonged to CTI. That information included the concept behind BLACKWATER, marketing and sales plans, and the method of creating a unique beverage containing suspended fulvic and humic acids that was permanently black in color.

77.   The Wilkie Sisters knew that the information was confidential.

78.   The Wilkie Sisters breached this confidence when they stole the BLACKWATER name, stole the company's marketing and distribution plans, and attempted to steal the proprietary fulvic and humic acid formula for their own commercial gain.  The Wilkie Sisters attempted to profit financially through the breach of confidence and creation of a competing product.

79.   The breach of confidence has damaged, and continues to damage CTI.  The Defendants sell a competing product using CTI's confidential information.  CTI has lost, and continues to lose, sales and business opportunities as a result of the breach of the confidence.

## SIXTH CAUSE OF ACTION

### (Trademark Infringement under 15 U.S.C. §1125)

### Against All Defendants

80.   CTI incorporates by reference and re-allege allegations 1-79 above, as if set forth fully herein.

81.   CTI, along with Blackwater, owns a valid, protectable right in the BLACKWATER mark because it is the proper owner of the trademark application for BLACKWATER and used the mark in commerce, in connection with beverage products, before any other entity.

82.   To the extent Jacqueline Wilkie or Louise Wilkie used the mark in commerce prior to leaving Blackwater, it was as an agent of Blackwater and under license from CTI.  After leaving Blackwater, any use by the Wilkie Sisters, CEO or Eclipse was a trademark infringement, a breach of contract, a breach of fiduciary duty, and a breach of confidence.

83.   Any use by BLK or the Manzo-Laurita Family post-dates use by CTI and Blackwater, and their licensees.  BLK cannot rely on the date of its intent to use application as that application should have been transferred to

1    CTI and the application matured into a registration based on fraud on the

2    USPTO.

3         84.    Defendants are using the BLACKWATER mark in connection

4    with the offering of their goods and services without CTI's or Blackwater's

5    consent, and with knowledge of their rights.

6         85.    Defendants' unauthorized use of the BLACKWATER mark

7    indicates to consumers that Defendants' goods are in some manner connected

8    with, sponsored by, affiliated with, or related to CTI or Blackwater, CTI's

9    licensees, or their goods and services.

10        86.    Defendants' unauthorized use of the BLACKWATER mark is

11   also likely to cause consumers to be confused as to source, nature and quality

12   of the goods Defendants are promoting or selling.

13        87.    BLK has admitted that there is a likelihood of confusion between

14   the parties' BLACKWATER products.

15        88.    Indeed, Defendants claim use of the exact same BLACKWATER

16   mark on the same or very similar product.  They sell in the exact same retail

17   channels of high-end retailers, restaurants, and on the internet.  Because of the

18   media attention drawn by the Manzo-Laurita Family and their wrongful use of

19   said mark on a national and international television reality show in which they

20   routinely appear, Defendants are likely to overwhelm and saturate the

21   marketplace and falsely suggest that BLK, the Wilkie Sisters, and the Manzo-

22   Laurita Family is responsible for the BLACKWATER idea, creation, and

23   name, when such is not the case.

24        89.    CTI and Blackwater have evidence of actual consumer confusion.

25        90.    Defendants' use of "blk. water" of "blk. BLACKWATER" is also

26   likely to cause confusion as they have nearly the same look and sound as

27   BLACKWATER.

28

91.   Defendants' unauthorized use of the BLACKWATER mark (including the highly similar blk.water and blk.BLACKWATER marks) in connection with the offering of its goods deprives CTI and its partner of the ability to control the consumer perception of the quality of the goods and services marketed under the BLACKWATER mark, and places their valuable reputation and goodwill in the hands of Defendants, over whom CTI has no control.

## SEVENTH CAUSE OF ACTION

### (False Designation of Origin under 15 U.S.C. §1125)

### Against All Defendants

92.   CTI incorporates by reference and re-allege allegations 1-91 above, as if set forth fully herein.

93.   Defendants' unauthorized use of the BLACKWATER mark falsely suggests that their goods are connected with, sponsored by, affiliated with, or related to CTI and Blackwater, and constitutes a false designation of origin in violation of 15 U.S.C. §1125(a).

## EIGHTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

### Against All Defendants

94.   CTI incorporates by reference and re-allege allegations 1-93 above, as if set for fully herein.

95.   Defendants' acts described above constitute common law trademark infringement.  Defendants' actions are likely to confuse consumers as to source, nature and quality of the goods Defendants are offering for sale.

## NINTH CAUSE OF ACTION

### (Unfair Competition under Cal. Bus. & Prof. Code §17200)

### Against All Defendants

COMPLAINT                                      - 22 -

Case No.

96.    CTI incorporates by reference and re-allege allegations 1-95 above, as if set forth fully herein.

97.    Defendants' acts described above constitute unfair competition in violation of California Business and Professional Code §17200 *et seq.*, as they are unlawful, unfair, and fraudulent business practices, and are likely to deceive the public.

## TENTH CAUSE OF ACTION

### (Common Law Passing Off and Unfair Competition)

### Against All Defendants

98.    CTI incorporates by reference and re-allege allegations 1-97 above, as if set forth fully herein.

99.    Defendants' unauthorized use of the BLACKWATER mark constitutes passing off and unfair competition of Plaintiff's rights in violation of common law.

## ELEVENTH CAUSE OF ACTION

### (Damages Caused by Fraud on the USPTO (15 U.S.C. §1120))

### Against Jacqueline Wilkie and BLK

100.   CTI incorporates by reference and re-allege allegations 1-99 above, as if set forth fully herein.

101.   Jacqueline Wilkie filed application Ser. No. 77/910,623 ("the '623 Application") for BLACKWATER in connection with "drinking water" with the USPTO *in her own name* on January 13, 2011.  That application eventually matured into registration 3,986,573 ("the '573 Registration").

102.   At the time Ms. Wilkie filed the application, she signed a sworn declaration, under penalty of perjury that stated:

> The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the

validity of the application or any resulting registration, **declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered,** or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; **to the best of his/her knowledge and belief** no other person, firm, corporation, or association **has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive**; and that **all statements made of his/her own knowledge are true**; and that all statements made on information and belief are believed to be true.

103.   At the time Ms. Wilkie signed this sworn declaration, she knew that she did not have the right to apply for the trademark in her own name. She knew that she should have applied in the name of CTI. She knew that she did not have the right to use BLACKWATER in commerce in her own name and that the rights belonged to CTI, which had created the name and logo.

104.   In April 2010, when Ms. Wilkie transferred the '623 Application to BLK and filed a Statement of Use, Ms. Wilkie and BLK claimed, under penalty of perjury, to have been using the mark in commerce as of August 1, 2010. Ms. Wilkie was still a Vice President of Blackwater on August 1, 2010. Moreover, BLK did not yet exist at that time.

105.   In addition, in concert, Ms. Wilkie and BLK filed a specimen of use, claiming to the USPTO that they had used the product, as shown, as of August 1, 2010. Notably, Ms. Wilkie and BLK's specimen is a near replica of that created and used by CTI:




*CTI's BLACKWATER product*                    *Specimen Submitted by J. Wilkie and BLK*

106.   Ms. Wilkie and BLK did not sell any products using the mark as shown in the specimen and upon information and belief, the specimen was a forgery created by Jacqueline Wilkie.

107.   Ms. Wilkie's and BLK's sworn statements of exclusive right to BLACKWATER, their claimed use, and their specimen of use are all misstatements of fact made to the USPTO.  The misstatements are material because the USPTO used them as the basis for granting the '573 Registration for the BLACKWATER mark.

108.   Ms. Wilkie and BLK's misstatements were made with the intent to deceive the USPTO into granting a registration to Ms. Wilkie and BLK that they were not entitled to.  As such, Ms. Wilkie and BLK committed fraud on the USPTO.

109.   Jacqueline Wilkie and BLK obtained the '573 Registration through fraud on the USPTO by making material misrepresentations of fact with the intent to deceive the USPTO and upon which the USPTO relied in granting the '573 Registration.

COMPLAINT                              - 25 -

Case No.

110.   CTI, as well as Blackwater, has been damaged through that fraudulent registration.  Among other damage, CTI has lost value, sales and business opportunities because of Ms. Wilkie's and BLK's fraudulent registration and misappropriation of the BLACKWATER mark.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following:

A.   Entry of an order and judgment requiring that All Defendants, including their agents, servants, employees, owners and representatives, and all other persons, firms or corporations in active concert or participation with them, be enjoined and restrained from (a) using in any manner the BLACKWATER trade name and trademark, or any name or mark that is confusingly similar to or a colorable imitation of this mark, including but not limited to blk.water or BLK water; (b) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, or prospective customers of Plaintiff's products or services, as to the source of the products or services offered for sale, distributed, or sold, or likely to deceive members of the public, or prospective customers, into believing that there is some connection between Plaintiff and Defendants; and (c) from selling or advertising for sale any mass-retail marketed water infused with fulvic acid.

B.   A judgment ordering Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which they have complied with the injunction, ceased all sales of goods and services under the BLACKWATER trade name and mark;

C.   A judgment ordering Defendants, pursuant to 15 U.S.C. § 1118, to deliver up for destruction, or to show proof of said destruction or sufficient

1   modification to eliminate the infringing matter, all articles, packages,

2   wrappers, products, displays, labels, signs, vehicle displays or signs, circulars,

3   kits, packaging, letterhead, business cards, promotional items, clothing,

4   literature, sales aids, receptacles or other matter in the possession, custody, or

5   under the control of Defendants or their agents bearing the trademark

6   BLACKWATER in any manner, or any mark that is confusingly similar to or

7   a colorable imitation of this mark, including without limitation blk.water or

8   BLK.water;

9       D.    A judgment ordering Defendants to take all steps necessary to

10   cancel or transfer to Plaintiff, in Plaintiff's sole discretion, any domain names

11   that include the BLACKWATER trademark that are in Defendants' possession

12   or control, and to remove all references to BLACKWATER from all of their

13   other websites;

14       E.    A Judgment and Order sustaining cause of action three, ordering

15   re-assignment of the '573 Registration to CTI or its designee;

16       F.    For the recovery of all damages sustained by Plaintiff due to the

17   wrongs of the Defendants;

18       G.    For disgorgement of all gains, profits, and advantages derived by

19   Defendants from their acts of trademark infringement, unfair competition, and

20   other violations of law;

21       H.    A Declaration that Defendants' revenues be held in a constructive

22   trust for the benefit of Plaintiff;

23       I.    For exemplary and treble damages, as provided by the law;

24       J.    For punitive damages;

25       K.    For all costs and expenses;

26       L.    For prejudgment interest at the maximum legal rate; and

27       M.    For such other and further relief as the Court may deem proper.

28

COMPLAINT

Case No.

Dated:  December 15, 2011.

PILLSBURY WINTHROP SHAW
PITTMAN LLP
BOBBY GHAJAR
MARK LITVACK
MARCUS PETERSON
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406

By _____

Attorneys for Plaintiff
CREATIVE THINKERS, INC.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury of all issues so triable.

Respectfully submitted,
Dated:  December 15, 2011

PILLSBURY WINTHROP SHAW
PITTMAN LLP
BOBBY GHAJAR
MARK LITVACK
MARCUS PETERSON
725 South Figueroa Street, Suite 2800
Los Angeles, CA  90017-5406
By

Attorneys for Plaintiff
CREATIVE THINKERS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1932 AG (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| Canadian Corporation Creative Thinkers, Inc. a _____ *Plaintiff* v. BLK Brands, LLC; J. Wilkie; L. Wilkie; CE Organics; Eclipse Concepts; C. Manzo; A. Manzo; C. Laurita _____ *Defendant* SEE ATTACHED | ) ) ) ) ) ) ) ) ) |

Civil Action No.   SACV11-1932 AG (JPRx)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Bobby A. Ghajar
Mark D. Litvack
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*
JULIE PRADO   SEAL

Date:   12/15/2011   _____
*Signature of Clerk or Deputy Clerk*

1  BOBBY GHAJAR (SBN 198719)
   Bobby.ghajar@pillsburylaw.com
2  MARK LITVACK (SBN 183652)
   Mark.litvack@pillsburylaw.com
3  MARCUS D. PETERSON (SBN 265339)
   Marcus.peterson@pillsburylaw.com
4  PILLSBURY WINTHROP SHAW PITTMAN LLP
   725 South Figueroa Street, Suite 2800
5  Los Angeles, CA  90017-5406
   Telephone: (213) 488-7100
6  Facsimile: (213) 629-1033
   Attorneys for Plaintiff
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  WESTERN DIVISION

11
   CREATIVE THINKERS, INC, a          )   No.  CV -
12 Canadian Corporation,              )
                                      )
13                 Plaintiff,         )   COMPLAINT FOR
                                      )   TRADEMARK
14      vs.                           )   INFRINGEMENT; FALSE
                                      )   DESIGNATION OF ORIGIN;
15 CHRIS MANZO, an Individual;        )   UNFAIR COMPETITION;
   ALBIE MANZO, an Individual;        )   BREACH OF WRITTEN AND
16 CHRIS LAURITA, an Individual.      )   ORAL AGREEMENTS;
   BLK BRANDS, LLC, a New York        )   BREACH OF FIDUCIARY
17 Limited Liability Company;         )   DUTY; BREACH OF
   JACQUELINE WILKIE, an              )   CONFIDENCE;
18 Individual; LOUISE WILKIE, an      )   MISAPPROPRIATION OF
   Individual; CE ORGANICS, a         )   TRADE SECRETS
19 Canadian Company of unknown        )
   structure; ECLIPSE CONCEPTS,       )
20 INC., a Canadian Corporation;      )
                                      )   JURY TRIAL DEMANDED
21                 Defendants.        )
                                      )
22

23                  **INTRODUCTION**

24      This case combines international theft with reality television, as

25 Defendants have conspired together to steal the creation and property of the

26 Plaintiff, Creative Thinkers, Inc.  Creative Thinkers created the concept and

27 idea of the "better mousetrap" of water drinks when it developed the idea and

28 concept of infusing water with the minerals fulvic acid and humic acid and

COMPLAINT                        - 1 -

                                                    Case No.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Creative Thinkers, Inc. | BLK Brands, LLC; Jacqueline Wilkie; Louise Wilkie; CE Organics, Ltd.; Eclipse Concepts, Inc.; Chris Manzo; Albie Manzo; Chris Laurita |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| PILLSBURY WINTHROP SHAW PITTMAN, LLP<br>725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017<br>(213) 488-7100 | BLAKELY LAW GROUP<br>915 North Citrus Avenue, Los Angeles, CA 90038<br>(323) 464-7410 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT: $** According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. Sec. 1120 (fraud on the USPTO), 15 U.S.C. sec. 1125 (trademark infringement and false designation of origin), Cal. Bus. Prof. Code 17200 (unfair practices)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus- Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: **SACV11-1932**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑Yes
If yes, list case number(s): 2:11-cv-06378-GW -SS

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☑A. Arise from the same or closely related transactions, happenings, or events; or
☑B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☑D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Canada |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York<br>New Jersey<br>Canada |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles<br>Orange | New York<br>New Jersey<br>Canada |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**                          Date 12/15/2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |